Rakhee V. Patel
State Bar No. 00797213
Yewande A. Akinwolemiwa
State Bar No. 24056633
PRONSKE & PATEL, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: rpatel@pronskepatel.com
Email: yakinwolemiwa@pronskepatel.com

**PROPOSED COUNSEL FOR THE DEBTOR**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **In re:** § | |
| § | **CASE NO. 11-41600-11** |
| **A1 HOTELS, LLC** § | |
| § | **CHAPTER 11** |
| **Debtor.** § | |

**EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDERS**

TO THE HONORABLE D. MICHAEL LYNN,
UNITED STATES BANKRUPTCY JUDGE:

A1 Hotels, LLC (the "Debtor"), debtor and debtor-in-possession, in the above-referenced bankruptcy case, submits this motion (the "Motion") pursuant to Sections 105, 361, 362, 363 and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule" or "Bankruptcy Rules"), seeking an order from the Court (i) authorizing the use of cash collateral, if any, pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b);

and (ii) granting adequate protection to the pre-petition secured lenders. In support of this Motion, the Debtor respectfully represents as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding, and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

## II. BACKGROUND

3. On March 21, 2011 (the "Petition Date"), the Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its property as a debtor in possession.

4. No trustee or examiner has been appointed in the Debtor's Chapter 11 bankruptcy proceeding, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

5. The Debtor is a Texas Limited Liability Company. The Debtor owns and operates a hotel located at 3501 East Division Street, Arlington Texas (the "Property").

6. Due to the economic downturn that has drastically reduced the amount of people who travel and consequently the amount of people who require overnight accommodations, the Property began to experience cash flow concerns, which led to further debt servicing issues. In an effort to balance cash needs and manage its debts fairly among all creditors and equity interest owners, the Debtor determined that this filing was necessary.

**One World Bank Loan**

7. On or about November 10, 2008, the Debtor entered into that certain Promissory Note (the "One World Note") and Deed of Trust, Security Agreement and Assignment of Rents (the "One World Deed of Trust," and together with the One World Note, the "One World Loan Docs") with One World Bank whose address is P.O. Box 29819 Dallas, Texas 75229 ("One World"), whereby One World agreed to loan funds to the Debtor for business purposes. The original principal balance of the One World Note was $1,393,923.00.

8. The One World Deed of Trust provides that the One World Note is secured by the Property, thus One World may allege a lien upon the Debtor's cash. The One World Deed of Trust states as follows:

> TO SECURE the full and timely payment of the Indebtedness and the performance of the Obligations, Grantor has **GRANTED, BARGAINED, ASSIGNED, SOLD** and **CONVEYED**, and by these presents does **GRANT, BARGAIN, ASSIGN, SELL** and **CONVEY** unto the Trustee the following described property (the "Property") in trust, for the use and benefit of the Beneficiary:
>
> (a) the premises located in Tarrant County, Texas and more fully described in Exhibit "A" attached hereto and made a part hereof for all purposes, together with all of the easements, rights of way, privileges, liberties, hereditaments, strips and gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining, and all of the estate, right, title, interest, claim or demand whatsoever of Grantor therein and in the streets and ways adjacent thereto, either in law or in equity (collectively, the "Land");
>
> (b) the structures or buildings, and all additions and improvements thereto, now or hereafter erected upon the Land, including all building materials and Fixtures (hereinafter defined) now or hereafter forming a part of said structures or buildings, or delivered to the Land and intended to be installed in such structures or buildings (collectively the "Improvements");

(c) all systems, devices, machinery, apparatus, equipment, fittings, appliances and fixtures of every kind and nature whatsoever located on the Land or the Improvements, including, but not limited to, all electrical, anti-pollution, heating, lighting, laundry, incinerating, power, air-conditioning, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, communication, garage and cooking systems, devices, machinery, apparatus, equipment, fittings, appliances and fixtures, and all engines, pipes, pumps, tanks, motors, conduits, ducts, compressors and switchboards, and all storm doors and windows, dishwashers, attached cabinets and partitions not included in the Improvements (collectively, the "Fixtures");

(d) all articles of personal property of every kind and nature whatsoever, including, but not limited to, all shades, awnings, beds, screens, furniture and carpets, now or hereafter affixed to, attached to, placed upon, used or usable in any way in connection with the use, enjoyment, occupancy or operation (including the planning, development and financing) of the Land or Improvements, but excluding any such articles of personal property belonging to any tenant of the Land or Improvements unless it is necessary to the operation of the Improvements (collectively, the "Personal Property");

(e) all leases of the Land, Improvements and Personal Property, or any part thereof, now or hereafter entered into, and all right, title and interest of Grantor thereunder, including cash or securities deposited thereunder to secure performance by the tenants of their obligations, and, including further, the right to receive and collect the rents thereunder (collectively, the "Leases");

(f) all revenues, income, rents, issues and profits of any of the Land, Improvements, Personal Property or Leases (collectively, the "Rents");

(g) all proceeds from the conversion, whether voluntary or involuntary, of any part of the Land, Improvements or Personal Property into cash or liquidated claims, including insurance proceeds, insurance premium refunds and condemnation awards;

(h) all contracts and subcontracts relating to the Land or Improvements and all permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Land or Improvements (collectively, the "Contracts"); and

(i) all funds, accounts, contract rights, instruments, documents, general intangibles (including fictitious, trade and other names, trademarks and symbols used in connection with the Land or Improvements, whether registered or not), and notes and chattel paper arising from or by virtue of any transaction relating to the Land or Improvements (collectively, the "Intangibles").

9. Nothing herein constitutes an admission of the validity, priority and/or extent of One World's lien, and specifically whether any post-petition cash constitutes cash collateral. Debtor reserves the right to amend and/or supplement this Motion.

**SBA Loan**

10. Upon information and belief, the Debtor also entered into that certain Promissory Note (the "SBA Note") with Texas Certified Development Company, Inc. on behalf of the U.S. Small Business Administration ("SBA" and together with One World, the "Lenders"), whereby the SBA agreed to loan funds to the Debtor. The original principal balance of the SBA Note was $867,000. The SBA Note provides that the SBA Note is secured by the Property, thus the SBA may allege a lien upon the Debtor's cash.

11. Nothing herein constitutes an admission of the validity, priority and/or extent of SBA's lien, and specifically whether any post-petition cash constitutes cash collateral. Debtor reserves the right to amend and/or supplement this Motion.

### III.   REQUEST FOR USE OF CASH COLLATERAL

12. Cash collateral, is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes proceeds, products, offspring, rents, or profits or property and the fees, charges, accounts or <u>other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties</u> subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title." 11 U.S.C. § 363(a).

13. 11 U.S.C. § 363(c)(2) states as follows:

> The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless
>
> > (A) each entity that has an interest in such cash collateral consents; or
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

14. To the extent 11 U.S.C. § 363(c)(2) is applicable, the Debtor requires the use of cash created from the use of the real property, equipment, and other personal property (the "Cash Collateral") to pay the reasonable and necessary operating expenses, including, but not limited to, supplies, routine repair and maintenance expenses, taxes, and insurance. The Debtor's use of this Cash Collateral is necessary to preserve and increase the value of the Debtor's Property and the Debtor's estate for the benefit of all creditors, including the Lenders and any other secured creditors purporting to hold an interest in the Debtor's cash collateral.

## A. GROUNDS FOR RELIEF REQUESTED

15. Section 363 of the Bankruptcy Code authorizes a debtor to use cash collateral if those having an interest in such cash collateral consent or the court authorizes the use. *See* 11 U.S.C. § 363(c)(2). The use of cash collateral, however, may be prohibited or conditioned, upon proper request, as is necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. §363(e). The burden, however, to demonstrate that the cash constitutes cash collateral belongs to the party claiming an interest in that cash and is not the Debtor's burden to prove the contrary. *See* 11 U.S.C. § 363(o)(2).

16. A court may authorize the use of cash collateral upon showing that those with an interest in the cash collateral are adequately protected. *See In re Harrington and Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. D. Mass. 1985); *In re Certified Corp.*, 51 B.R. 768, 770 (Bankr. D. Hawaii 1985) ("It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection."). Adequate protection requires examination of the creditor(s)' aggregate collateral position, not simply protection of its lien on cash. Adequate protection may be provided by granting replacement or additional liens "to the extent [that the use of cash

collateral] results in a decrease in the value of [an] entity's interest in property." *See* 11 U.S.C. § 361(2). Authorizing a debtor to use cash collateral on an interim basis is appropriate where, as here, continuing the business as a going concern will cause the generation of future revenues upon which the secured lender is granted replacement liens. *See, e.g., In re Neise, Inc.,* 16 B.R. 600 (Bankr. D. Fla. 1981); *In re Certified Corp.*, 51 B.R. 768 (Bankr. D. Hawaii 1985); *In re Post-Tron Systems, Inc.*, 106 B.R. 345 (Bankr. D.R.I. 1989).

17. By authorizing the Debtor to use Cash Collateral, the Court will place the Debtor in a position to indirectly fund its operating expenses and to operate as a going concern for the immediate future. The Debtor needs to use Cash Collateral in order to, *inter alia*, pay its employees, vendors, and meet other on-going business obligations. Without the authority to use Cash Collateral, the Debtor will be unable to fund its business operations in a manner that will allow the Debtor to continue to operate as a going concern, to the detriment of *all* of Debtor's creditors, including the Lenders. The failure to allow the Debtor to use Cash Collateral to fund its day-to-day operations would damage not only the Debtor, and its tenants, but also the Lenders and the other creditors of the Debtor, including the pool of unsecured creditors.

**B.  OFFER OF ADEQUATE PROTECTION AND SUMMARY OF INTERIM CASH COLLATERAL ORDER**

18. Attached to this Motion as **Exhibit "A"** is a proposed form of the Interim Cash Collateral Order (the "Interim Cash Collateral Order") that authorizes the Debtor's use of Cash Collateral. Also attached to this Motion as **Exhibit "B"** is a proposed 15 day budget of the Debtor's operations that itemizes the use of cash.

19. The offer of adequate protection for both the interim and final orders is as follows:

a)  **Lenders will be granted a replacement lien in cash, subject to a determination by the Court that Lenders hold a fully perfected, enforceable pre-petition lien on cash, with the exceptions and provisions that follow, with the same priority as the Lenders' individual pre-petition liens, if any, and solely to the extent that the value of Lenders' collateral, on an aggregate basis, diminishes as a result of the use of Cash Collateral authorized by this Court;**

b)  **The replacement liens will not prime any validly attached and properly perfected lien held by a third party on specific property of the Debtor as of the Petition Date;**

c)  **The replacement lien will not attach to chapter 5 actions of the Debtor or the proceeds of the recovery upon such actions;**

d)  **Except for post-petition cash generated from operations, the replacement lien will not attach to any unencumbered property of the Debtor, if any, or the proceeds from any sale of any unencumbered property, and the proceeds from any sale of any unencumbered property shall be deposited into a separate unencumbered account and, absent further order of the Court, shall not be subject to the Lenders' replacement lien;**

e)  **Lenders' replacement lien shall attach to all bank accounts of the Debtor, except as provided in the immediately preceding subsections (c) and (d), until a determination by the Court that Lenders do not hold a fully perfected, enforceable pre-petition lien on cash. Lenders' alleged lien on any pre-petition cash in such account shall not be affected by the deposit and commingling of post-petition operating cash in such account, even if such post-petition operating cash is later determined by order to be unencumbered. Lenders' pre-petition cash collateral in such accounts shall be deemed "last out" of such accounts, except to the extent that any expense of the Debtor is surcharged by the Court against such pre-petition cash as allowed by section 506(c) of the Bankruptcy Code;**

f)  **The replacement lien will attach only to the extent that cash used by the Debtor is ultimately determined by the Court to be Cash Collateral of Lenders;**

g)  **The replacement lien will not apply to any reduction in cash value caused from the payment of an expense that is later**

                **surcharged against Lenders' collateral based on Section 506(c) of the Bankruptcy Code;**

       **h)**      **Subject to the limiting conditions on the replacement lien, the replacement lien will be binding upon any subsequently appointed chapter 11 or chapter 7 trustee;**

       **i)**      **The cash will be used to continue the operations of the Debtor and therefore maintain the going concern value of the aggregate of the Lenders' collateral; as such, the use of cash will be regulated by a pre-approved budget to assure that appropriate operating expenses are being paid and that no inappropriate expense is paid;**

       **j)**      **The cash will be used in part to maintain insurance on the Debtor's collateral and all other of the Debtor's assets;**

       **k)**      **The Debtor will provide to Lenders monthly cash flow reports, monthly operating reports, and monthly financial statements and schedules. These reports will allow Lenders to vigilantly monitor their collateral position and seek relief should it become necessary. The reports are to be provided on the 20th of each month for the prior calendar month; and**

       **l)**      **The use of Cash Collateral may be terminated by the Court on motion, after notice and hearing, if the Court determines that Lenders are no longer adequately protected.**

       **m)**      **Debtor intends to seek a provision in the final Cash Collateral Order providing a carve out for approved estate professionals, including but not limited to, Debtors' counsel, any counsel for a statutorily formed committee, as well as any United States' Trustee Fees.**

20. The Debtor believes that the terms of the Interim Cash Collateral Order are fair and reasonable under the circumstances. The Debtor asserts that the aggregate value of Lenders' alleged cash collateral will not diminish as a result of the use of cash in this case. The value of Lenders' alleged non-cash collateral will not diminish during the life of this case. The value of the Lenders' alleged interest in cash may fluctuate, but such value should not diminish, other than minimally, over the next 6 to 12 months, the projected life of this case.

21. The Debtor believes that the Lenders are entitled to the protections set forth in the proposed Interim Cash Collateral Order. The adequate protection provisions have been drafted to provide protection without taking undue or inappropriate value from the Estate and its unsecured creditors.

22. Given that the interests of Lenders will be adequately protected, it is in the best interest of the Debtor, its Estate, and all of its creditors for the Debtor to be able to continue operations and for the Debtor to be authorized to use Cash Collateral, even without the Lenders' consent.

## V. NOTICE OF THIS MOTION

23. No Chapter 11 trustee or creditors' committee has been appointed in this case as of the filing of the Motion. Notice of this Motion has been provided to the Office of the United States Trustee, the Lenders, and the twenty largest unsecured creditors, via electronic means, facsimile if available, and otherwise via United States First Class Mail, and any parties requesting notice of pleadings, which the Debtor submits is sufficient notice under the circumstances and that no further notice is necessary.

## VI. REQUEST FOR RELIEF

24. The Debtor respectfully asks that it be authorized to use Cash Collateral for the purposes of paying necessary business expenses as allowed by Section 363 of the Bankruptcy Code, and that the Court grant the Lenders a replacement lien on post-petition assets, as allowed by Sections 361, 363 and/or 364 of the Bankruptcy Code, consistent with the terms and provisions contained in this Motion. The Debtor requests that this relief be granted on both an interim and final basis. Relief is necessary on an interim basis to avoid immediate and irreparable harm to the Debtor, its Estate, and all of its creditors, as previously asserted. At the

preliminary hearing, the Debtor requests that the Court authorize use of Cash Collateral according to the attached budget through the final hearing scheduled on the Motion, and that the Court schedule a final hearing. At the final hearing, the Debtor asks that the Court authorize it to use Cash Collateral on a go-forward basis through the life of this case, subject to such use being terminated by further order of this Court upon a finding that the Lenders are no longer adequately protected.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests the Court (i) authorize the use of Cash Collateral pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(b); (ii) grant adequate protection to the pre-petition secured lender; and (iii) grant such other relief and further relief as the Court may deem proper.

Dated: March 25, 2011.                          Respectfully submitted,

                                                */s/ Yewande A. Akinwolemiwa*
                                                Rakhee V. Patel
                                                State Bar No. 00797213
                                                Yewande A. Akinwolemiwa
                                                State Bar No. 24056633
                                                PRONSKE & PATEL, P.C.
                                                2200 Ross Avenue, Suite 5350
                                                Dallas, Texas 75201
                                                (214) 658-6500 - Telephone
                                                (214) 658-6509 – Telecopier
                                                Email: rpatel@pronskepatel.com
                                                Email: yakinwolemiwa@pronskepatel.com

                                                **PROPOSED COUNSEL FOR**
                                                **THE DEBTOR**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on March 25, 2011, I caused to be served the foregoing pleading upon the parties on the Master Service List attached hereto via electronic mail and/or facsimile, and/or United States mail, first class delivery

                                                */s/ Yewande A. Akinwolemiwa*
                                                Yewande A. Akinwolemiwa

**EMERGENCY MOTION FOR A FINAL ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(B) AND (II) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION SECURED LENDER – Page 12**

**CERTIFICATE OF CONFERENCE**

      I, the undersigned, hereby certify that, on March 25, 2011, I conferred with Elizabeth Ziegler, attorney for the United States Trustee, regarding the relief requested herein, and Ms. Ziegler responded with comments to the budget, which was subsequently modified. On March 24, 2011, the undersigned also conferred with Mr. Mark Stromberg, attorney for One World Bank, and he was not opposed to the relief requested herein. On March 25, 2011, the undersigned attempted to confer with Mr. Andrew Baka, attorney for the SBA but was informed that Mr. Baka is out of the office till Tuesday, March 29, 2011.

                                                              /s/ Yewande A. Akinwolemiwa
                                                               Yewande A. Akinwolemiwa

# A1 HOTELS, LLC
# Case No. 11-41600-DML-11
# MASTER SERVICE LIST

**Debtor**:

A1 Hotels, LLC
6831 Satsuma Dr.
Houston, TX 77041

**Debtor's Counsel:**

Rakhee V. Patel
Yewande A. Akinwolemiwa
Pronske & Patel, P.C.
2200 Ross Avenue, Suite 5350
Dallas, Texas 75201
Tel: (214) 658-6500
Fax: (214) 658-6509
Email: rpatel@pronskepatel.com
Email: yakinwolemiwa@pronskpatel.com

**Governmental Agencies:**

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

United States Trustee's Office
**Served via ECF at**
**ustpregion06.da.ecf@usdoj.gov**
**albert.loftus@usdoj.gov**

**Secured Creditor**

Betsy Price
Tarrant County Tax Assessor
P.O. Box 961018
Ft Worth, TX 76161

Lovkesh Kallia
2408 Kings Country Dr.
Irving, TX 75038

Mark Stromberg
Stromberg Stock
Counsel for One World Bank
**Served via ECF at**
**mark@strombergstock.com**

Propel Financial Services LLC
P.O. Box 100350
San Antonio, TX 76011

Texas Certified Development Comp Inc.
P.O. Box 6370
Austin, TX 78762

Andrew Baka
Counsel for U.S. Small Business
Administration
**Served via Email at**
**andrew.baka@sba.gov**

**Twenty Largest Unsecureds**

Wyndham Hotel Group
22 Sylvan Way
Parsippany, NY 07054

Sam's Club DiscoverGemb
P.O. Box 960016
Orlando, FL 32896

Ameripower
P.O. Box 16206
Sugarland, TX 77496

Arlington Utilities
P.O. Box 90020
Arlington, TX 76004-3020

HD Supply
P.O. Box 509058
San Diego, CA 92150

Northwest Carpet Mills
Attn: Shelease Valentine
950 E. Paces Ferry Road, Suite 2200
Atlanta, GA 30326

Atmos Energy
P.O. Box 790311

St. Louis, MO 63179-0311

MD & Associates CPA
8303 SW Freeway, Suite 570
Houston, TX 77074

Lone Star
611 S. Congress Ave., #300
Austin, TX 78704

Bank of America
P.O. Box 15184
Wilmington, DE 19886

Versacor Pest Control
2825 Exchange Blvd., Suite 104
Southlake, TX 76092

Integrity Termite & Pest Control
1037 Cavender Drive
Hurst, TX 76053

Direct TV
P.O. Box 60036
Los Angeles, CA 90060-0036

ADT Security Service
P.O. Box 371956
Pittsburgh, PA 15250

American Hotel Register Company
Attn: Stephanie Sachs
16458 Collections Center Dr.
Chicago, IL 60693

Westel Phone Service
P.O. Box 203130
Austin, TX 78720

RETC LP
3325 Silverstone Dr.
Plano, TX 75023

Auto-Chlor Services

Dept #205
P.O. Box 4869
Houston, TX 77210

Elavon
P.O. Box 86
Minneapolis, MN 55486

Republic Service
1212 Harrison Ave.
Arlington, TX 76011-7332

**Notices of Appearance:**

Daniel M. Eliades
Forman Holt Eliades & Ravin LLC
Counsel for Days Inns Worldwide, Inc.
**Served via ECF at**
**deliades@formanlaw.com**

Laurie Spindler Huffman
Linebarger Goggan Blair & Sampson, LLP
Counsel for Tarrant County
**Served via ECF at**
**Laurie.Spindler@publicans.com**